Kresta Nora Daly, SBN 199689
**BARTH DALY LLP**
431 "I" Street, Suite 201
Sacramento, California 95814
Telephone: (916) 440-8600
Facsimile:  (916) 440-9610
Email:  kdaly@barth-daly.com

Attorneys for Defendant
THEODORE B. HUTZ

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:10-CR-00238-EJG |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| v. | |
| THEODORE B. HUTZ, | |
| Defendant. | |

## I. BACKGROUND

Ted Hutz is a 61-year old father of two. He spent much of his adult life working in the real estate industry. In his younger years he found himself abusing drugs and alcohol. Nearly 30 years ago he got sober, earned his Master's Degree in Counseling, and has helped many other people achieve and maintain sobriety through Alcoholics Anonymous.

In 2007 his marriage fall apart and he entered a deep depression. He spent over a year not working. In late 2008 and early 2009 he tried to return to work buying and flipping houses. He found himself shut out of the auction market by people he had previously considered friends. He soon realized in order to participate in the housing auction market in San Joaquin County he would need to participate in the secondary auctions.

In 2009 Mr. Hutz learned about this investigation. Before the details of the investigation became public he agreed to cooperate with the government. Indeed, he was the first cooperator in

this case and provided the government with spreadsheets detailing which properties he and others purchased during the secondary auctions, which other buyers were involved, the amount of money that traded hands amongst the participants, etc.

Since agreeing to cooperate with the government Mr. Hutz has largely been unable to work. His line of credit has been cancelled. Private investors, previously willing to loan him money, will no longer work with him. He has been forced to put his and his children's futures on hold and wait and see what price he will pay for his poor choices.

As he explained during his debriefs, the detailed charts Mr. Hutz gave to the government showing which purchasers were involved in specific transactions were created so Mr. Hutz had a record on which to base his taxes. Mr. Hutz, like others, was focused on the hot foreclosure market and the money that could be made flipping properties.

Since that time Mr. Hutz has been all but unable to earn a living. He went from making a respectable six-figure income to living on his dwindling savings and investments. His eldest son, a star athlete, is going to community college because Mr. Hutz cannot afford to send his son to a four-year college. Mr. Hutz has spent the last seven years with his life functionally on hold.

## II.   A DOWNWARD DEPARTURE IS WARRANTED IN THIS CASE

### A.   A Downward Departure Is Appropriate Under 18 USC 3553

In *Booker* the United States Supreme Court held that district courts must consider the guideline range as advisory, not mandatory, and that they must also consider the other directives set forth in 18 USC 3553(a). (*United States v. Booker*, 543 U.S. 220 (2005).)

Section 3553(a) requires court to "impose a sentence sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

(a)  Retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) Deterrence;

(c) Incapacitation ("to protect the public from further crimes"); and

(d) Rehabilitation ("to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner").

The sufficient but not greater than necessary requirement is often referred to as the parsimony provision. The parsimony provision is not just another factor to be considered along with the others set forth in Section 3553(a) – it sets an independent limit on the sentence a court may impose. (*Kimbrough v. United States*, 552 U.S. 85, 101, (2007) (referring to the clause as an "overarching provision" that, post- *Booker*, "permit the court to tailor the sentence" to the individual defendant and crime in light of the goals of the Sentencing Reform Act of 1984).)

The Sentencing Commission itself has recognized the need for alternative sentences that do not involve a prison term stating:

> Effective alternative sanctions are important options for federal. State and local criminal justice systems. For the appropriate offenders, alternative to incarceration can provide a substitute for costly incarceration. Ideally, alternative also provide those offenders opportunities by diverting them from prison (or reducing time spent in prison) and into programs providing the life skills and treatment necessary to become law-abiding and productive members of society.

(www.ussc.gov/general/20090206_Alternatives.pdf)

Ted Hutz is eligible for probation under 18 USC 3561 because this is a Class C felony as the PSR notes in paragraph 94.

The 3553 factors cry out for a sentence of probation in Mr. Hutz's case.

**B. The Government's 5k Recommendation Is Arbitrary And The Court Should Depart On Its Own Initiative**

In the plea agreement in this case, the government agreed to recommend a downward departure of up to 50 percent. In its 5k1.1 letter, the government has recommended 10 percent. This recommendation is offensively low given the substantial information Mr. Hutz provided in his debriefs with the government. At a minimum, the government's 5k1.1 recommendation is inappropriately low.

Mr. Hutz was either the first or second defendant to debrief and the second to enter a guilty plea. He provided a significant amount of information, including spreadsheets of properties involved in this case, dates, addresses, amounts of payouts to other defendants, the general structure and hierarchy of the participants, an analysis of relative culpability, who created

{00019954}

the scheme, who on a daily basis controlled the enterprise, the roles within the enterprise, personality types of co-conspirators, and other information that proved to be very useful to the government.  This information was used by the government in investigating other co-conspirators and corroborating information they received from other sources.  It allowed the government to quickly piece together the complicated web of names and relationships involved in this case.  Without Mr. Hutz's information the government would have taken much longer to indict and prosecute the rest of this case.

In discussions with the government regarding their 5k recommendation the government made mention of a 'policy shift' that occurred in 2011and the fact that this 5k recommendation was vetted at the highest levels.  This 'policy shift' occurred some two years after Mr. Hutz agreed to cooperate and enter a guilty plea.  The defense first learned about this 'policy shift' less than two weeks before the sentencing in this case.

The government also claims Mr. Hutz was given some benefit because he was not required to plead to the mail fraud as were many other defendants.  Defense counsel has no record of this benefit being communicated to the defense at any time prior to Mr. Hutz entering his plea[1].  In fact, the defense has no knowledge that this was considered a benefit at all until defense counsel was informed of such in early September 2016.

The defense cannot help but wonder if some part of Mr. Hutz's 'recommendation' is not influenced by the fact that Mr. Hutz testified on behalf of Mr. Katakis at his motion for a new trial.  Mr. Hutz testified truthfully he did not believe Mr. Katakis was involved in the conspiracy.  Mr. Hutz has maintained from his earliest debrief with the government that Mr. Katakis had nothing to do with the scheme.  His testimony at Mr. Katakis' motion for a new trial was consistent with his statements to the government.

The Ninth Circuit "has recognized that section 5K1.1's requirement that departure be premised on a government motion 'might not apply if the prosecution has acted with 'bad faith or arbitrariness that might conceivably present a due process issue." (*United States v. Goroza*, 941

---

[1] After Mr. Hutz entered his guilty plea defense counsel and Mr. Hutz learned other defendants were being required to plead to both a Sherman Anti-Trust Act violation and a mail fraud count.

{00019954}

F.2d, 908 (9th Cir. 1991) (quoting *United States v. Mena,* 925 F.2d 354, 355 (9th Cir.1991) (internal quotations omitted)).)

The Ninth Circuit also cited the Eighth Circuit in holding that where the prosecution fails to move for a downward departure despite clear evidence of the defendant's cooperation, a district court might properly depart downward on its own initiative. (*Mena*, 925 F.2d at 355-56 (citing *United States v. Justice*, 877 F.2d 664, 669 (8th Cir. 1989)).)

"[F]ederal district courts have authority to review a prosecutor's refusal to file a substantial assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." (*Wade v. United States*, 504 U.S. 181, 184 (1992).)  In order to be entitled to such relief, a defendant must make a "substantial threshold showing." (*Id.* at 185.) This showing must include more than "a claim that [he has] provided substantial assistance" and "generalized allegations of improper motive." (*Id.*)  Rather, it must involve some specific allegations such as evidence "that the Government refused to file a motion for suspect reasons such as his race or his religion," or that "the prosecutor's refusal to move was not rationally related to any legitimate Government end." (*Id.* at 186.)

Mr. Hutz has put his life on hold for six years. He debriefed with the government and incriminated his friends, some with whom he had been friends for more than 20 years because it was the right thing to do. He provided the government with significant information. The government responds with a 'policy shift' of 10%, the equivalent of 1.2 months credit – the government's recommendation of a 10% downward departure is the definition of arbitrary. The government has proffered no legitimate reason for its offensively low recommendation

**C. The Nature And Circumstances Of This Case And Of Mr. Hutz Indicate A Sentence Of Probation Is Appropriate**

The offense occurred approximately seven years ago. Since that time Mr. Hutz has dedicated almost all of his time and attention to raising his two sons. He has continued his active involvement in AA.

///

///

Attached to this brief are letters from those who know Mr. Hutz best. People who say:

- "Most important he's my Alcoholics Anonymous (AA) sponsor for the past 25 years. My wife thinks I owe him my life because he saved mine." Signed Tim Kooyman.
- "I met Theodore 22 years ago. I was going through some extremely tough times in my life and asked him to sponsor me with the Alcoholics Anonymous program. He knew very little about me and took the time to go over the 12 Steps of Alcoholics Anonymous program. At that time, I was looking at him as more as a father figure, I was 23 years old and didn't have a father figure to help me make the right decisions in my life. I had no one to look up to. Theodore took that role, so in my mind, he was more than just a sponsor." Signed Alessandro Aiello.
- "I have coached Ted's children and have had him on deck as an assistant coach. He has been a huge asset, providing training and mentoring the swimming/water polo players. His charter [sic]and advice regarding my team's development has been of great help." Signed Thomas Downer.
- "…[B]ack when I was 17, my dad became aware that I had been abusing substances and made it his mission to deter me from those choices given his own history as a young man. He did everything in his power to get me to come home and change my behavior and I can say with absolute certainty that I did despise his very being for what must have been at least half a year. Today after much upheaval and many consequences from my actions, I no longer suffer from the chronic depression and the drug dependence I once knew to be my normal everyday life. I doubt I'd be at such a point in my recovery today, had it not been for my father's unwavering conviction to do what he felt was right and best for me." Signed Theodore 'Cole' Hutz.
- "As a 20 year practicing member of the State Bar of California, there is no one I would turn to more readily in a crisis, or trust more in a business dealing, than Ted Hutz." Signed Deborah Perlman.

- "We have each been sober for more than 28 years.  Mr. Hutz in fact went back to school and acquired a masters in Family Counseling and worked in the field for about 10 years.  The numbers of people he has helped cannot be counted.  To this day he attends meetings on [sic] daily basis to help those still suffering.  He has started meetings and been the driving force behind a couple of yearly men's retreats that continue to this day.  He is an asset to the community and continually is paying it forward."  Signed Steven Werner.

- "When Ted told me about the criminal charges he was facing I was astounded.  Upon further discussion on the issue Ted expressed remorse for his choices and accepted full responsibility for his contemptable behavior.  While it was disheartening to learn this news I had a great deal of respect for the fact that he owned up to his indignant behavior and made no excuses as to why he chose that path nor did he place the blame on anyone else."  Signed Albert Lopez.

Since agreeing to cooperate with the government in this case in 2009 Mr. Hutz has done his best to move on with his life, efforts that have been hampered given protracted litigation which has caused delays in sentencing, delays beyond Mr. Hutz's control.

Mr. Hutz has been branded with a federal felony conviction.  Given Mr. Hutz's age, non-existent criminal history and shame at his conduct there is almost no chance he would recidivate.  He will not endanger his liberty or his family.

Mr. Hutz would very much like to return to work.  While he recognizes that returning to work will be difficult with a federal felony conviction that will make banks and investors reluctant to loan him money, he is determined to do so.  At the age of 61 he has time to pay what is owed in connection with this case and build a savings so he and his wife can retire and hopefully he can finance some portion of his children's college education.

Mr. Hutz has lived with this investigation hanging over his head for the past seven years.  He has had to live with the shame of being convicted of a felony – something everyone who knows him is aware of.  He is deeply embarrassed and saddened that because of his choices he cannot provide for his children in the manner in which he intended.  Placing him in custody now

would be counter-productive. He requests a sentence of probation, a restitution hearing, the fines agreed to in the plea agreement and a modification of the terms of supervision as set forth in his formal objections.

Dated:  September 6, 2016          Respectfully submitted,

BARTH DALY LLP


By     /s/ Kresta Nora Daly
       KRESTA NORA DALY
       Attorney for BRET NICHOLS